We'll hear argument next in case 2109, Shinn v. Ramirez. Mr. Royston. Mr. Chief Justice, and may it please the Court, the issue presented in this case is fundamentally a question of statutory interpretation. When Congress enacted 2254E2 as part of AEDPA, it created a high bar for federal evidentiary hearings on habeas claims involving state convictions. It codified the first part of the Keeney test in the opening part of E2 by echoing the words failure to develop from Keeney. And this Court in Williams v. Holland has already held that attorney negligence counts as failure to develop under E2 based on agency principles. If a failure to develop has occurred, Congress did not merely repeat Keeney and Coleman's cause and prejudice test for excusing it, but rather supplanted it by specifying in subsections A and B of E2 the cause and prejudice required. Congress thus spoke clearly, and the Court's role is to apply the statutory language. That no fact finder could have found the prisoner guilty is not enough. The prisoner must also satisfy E2A by showing either a new rule of constitutional law or that the factual predicate could not have been previously discovered through the exercise of due diligence. This is an intentionally high bar. Respondents rely on Martinez to create an additional exception to E2 beyond A and B. That proposition fails. Martinez was addressing cause for the cause and prejudice test for excusing a procedural default. Congress did not codify the procedural default or the excuses for overcoming it in AEDPA. In contrast, Congress did affirmatively codify the circumstances under which cause and prejudice is established to permit an evidentiary hearing following a failure to develop under E2. Martinez's judge-made rule cannot rewrite Congress's statutory questions. Standard. I invite questions from the Court. Counsel, it seems rather odd that we would allow a we would excuse a default under Martinez, but not allow the prisoner to make his underlying claim or develop his evidentiary basis for his underlying claim. Well, Your Honor, Martinez did not consider this question. I understand that, but it seems pretty worthless to have to say, well, we'll excuse a procedural default. To what end? In some cases, there may already be evidence in the state court record. Okay, let's take this case. To what end, if you're not allowed to develop the underlying claim? Well, in this case, our position is that the district court should not have gone into a Martinez hearing in Jones without looking whether there was enough state record evidence to establish an effective assistance of trial counsel in the first place. It's a fruitless exercise, but that doesn't mean that Martinez can overcome the statutory language. The court should simply cut it off at the beginning. In the Ramirez case, the evidence just wasn't there either way. And so the short answer is Martinez can be accommodated. The district court just shouldn't go down the path of having a Martinez hearing if there's not going to be state court evidence to establish the ultimate claim. But it's a basic syllogism. The idea is if you do get the right to raise the claim for the first time because your counsel was incompetent before, surely you have the right to get the evidence that's necessary to support your claim. I mean, the whole reason some states say you shouldn't raise your incompetence claim until after the direct proceedings is that it's much more efficient and natural to have an evidentiary hearing at that time rather than when you're halfway up the chain between the trial court and the court of appeals. I think Judge Collins in his dissent pointed out the flaw in that logic, which is there's asymmetric intervention here. Congress did specify in the E-2 when you can have a hearing. So the problem is the major premise of that syllogism is faulty. Well, they specified that before our decision in Martinez, right? Could you – sorry. I'm sorry. They specified that before our decision in Martinez? I'm talking about Judge Collins' dissent from denial en banc in this case. Yeah, but I thought the point you were making is that he had an explanation for why the language in E-2 trumped the theory that Martinez gave you the hearing and so then implicitly gave you the right to present evidence. I think it's incorrect to say that Martinez implicitly gave you the right to present evidence. That's just not in Martinez. The court was presented with a constitutional question. You know, when a state breaks out, in effect, You're certainly right about that. Right. It's not in Martinez. I mean, if it were, we wouldn't be here. But in what sense – in other words, if your claim of incompetence has to do with some factual evidence, by saying to the prisoners, look, don't raise it on direct appeal, raise it collaterally, you use – you lose the ability to press what is your central claim of incompetence. Correct. But I think Congress envisioned that in subsection I, where Congress expressly said incompetence of post-conviction counsel is not a basis for habeas relief. But was that also before Martinez? Yes. That's in the EDPA. Then I don't think you can say Congress envisioned the problem that only came up when we decided Martinez. Well, but I'm saying even if Martinez had answered the question presented, which is there a constitutional right to effective post-conviction counsel when that's the first chance to raise ineffectiveness of trial counsel, that would not be a claim that could be brought in federal habeas in district court because Congress has stripped the district courts of jurisdiction. Just as district courts don't grant habeas relief on Fourth Amendment grounds. That would be a claim that would have to be brought in state court because of subsection I. That's my point. I guess picking up on Justice Thomas' and the Chief Justice's question, though, doesn't it really gut Martinez in a huge number of cases? And then what's the point of Martinez? As the court obviously carefully crafted an opinion to give you the right to raise an ineffective assistance claim to make sure it's considered at least once, and this would really gut that in a lot of cases. So I need a good explanation for how to do that or why to do that given what Martinez says. I think to the extent that Martinez cannot be reconciled with E2, then at the end of the day Martinez should be overruled. I mean, Martinez offered an equitable exception to excusing a procedural default. Assuming we don't do that, what's your next answer? Then Martinez can be kept to what was expressly a very narrow question, which is when is there cause to excuse a procedural default? But it was a narrow question on an important issue. I mean, you have to assume that the court majority was unaware somehow of how this would play out. And was articulating this important right about when you could raise something but didn't realize, oh, actually you're never really going to be able to pursue it because of this other provision. I mean, it's hard to envision the court thinking that that would make any sense. Congress's purpose in AEDPA and in the bar and evidentiary hearings in particular specifically imagined the worst case scenario, which is a prisoner is actually innocent. And that's E2B. But that wasn't enough to permit a hearing. It said you still have to meet A. And A says either there has to be a new rule of constitutional law or that the evidence could not have been developed even with diligence. So I think the fundamental question is what was Congress's intent? And here Congress spoke clearly, I think, in E2B that innocence isn't enough here. Why is it? I mean, E2 has a fault standard in it. It says if the applicant has failed to develop the factual basis of a claim. And I thought in these various cases, you know, it's the usual rule that the attorney's fault gets attributed to the client. But that's not always the rule. And what Martinez essentially is saying is it's not the rule when that happens. It's not the rule when the state has directed a person into a post-conviction proceeding that at that point we're going to ascribe the failure to the state in the same way that we do when there's a constitutional claim of ineffective assistance. We say it's not your fault. We're going to ascribe the error to the state. So why isn't Martinez just essentially piggybacking on the Coleman rationale that this is not your error and so E2 doesn't apply? So I don't think Martinez can be understood as reinterpreting general agency principles. And if this court's decision in Davila, which is from 2017, where it said ineffective assistance on direct appeal, you cannot use the Martinez exception. So I don't think you can understand Martinez as a general agency case. It didn't purport to be that. It cannot logically be thought of as that because there's no limiting principle. I don't understand how the court can say in Davila the post-conviction counsel is your agent for raising an ineffective assistance of direct appellate counsel but not your agent for raising ineffective assistance of trial counsel. Why are they your agent in one but not the other? That's not what Martinez did. Martinez said we're going to create a narrow equitable exception to the procedural default rule. And when you have a judge-made exception to a judge-made rule compared to a statute that has its own exception that is very high, the statute ultimately has to trump, and that's why this is ultimately a case of statutory interpretation. Counsel, the problem is that the statute doesn't define what at fault means. It just says so long as you fail to develop. So by definition, what constitutes fault is defined by us, correct? Correct. So stop. One second, please. Okay? So in Williams we said the question under EPA is whether the respondents were at fault for not developing the facts of their claim. So that's the EPA question, okay? We have said in Maples that if your attorney abandons you, you are not at fault. And in Martinez we said if your attorney errs in exactly the situation here by failing to develop the record on appeal, which was the only opportunity you had to do it, you are not at fault. So I don't understand why you argue that the statute, because it doesn't say anything about what at fault means, why the statute forces us to conclude that the respondents are not at fault. Well, because the first part of E2 is echoing Keeney. Was there a procedural default in the first place? Martinez is the second step. Is there cause to excuse that? And then the third step, prejudice. If the correct way to read Martinez was that you're not at fault in the first place, there should not be a prejudice element to excuse the default. So obviously what Martinez is focused on is there cause to excuse a default that has occurred. And Williams and Holland both said that attorney error is imputed. How different is that from abandonment? It's different because General Maples was talking about general agency principles. It said under general first principles of agency law, if your agent abandons you by taking a job where they are a law clerk or they work for an international tribunal that they cannot even represent you, then they have abandoned you under general agency principles. That's not what's happened here. The trial counsel may have been incompetent and ineffective, but he did not abandon and she did not abandon her client under agency principles. And that's the distinction. That's the fundamental distinction. I think what's important to remember is even in Coleman, the attorney, I think he filed his notice of appeal of the post conviction like 33 days late. So, I mean, how could the prisoner, if you just think of it from a, how is he at fault for that? Or in Keeney, the post conviction counsel failed to bring in evidence that the interpreter, you know, didn't properly interpret what nolo condendere meant. In all those cases, it's hard to think of the prisoner as being at fault in the sense that we would say what he did was wrong. But the point is under agency principles, the counsel is the agent, and therefore the negligence of the agent is imputed to the prisoner. And that's what the court. Well, except that I think that Martine has pretty explicitly rejected that. And I'm just going to quote from a bunch of different places. But the court says it was the state's deliberate choice to move trial ineffectiveness claims outside the direct appeal process. And it was that choice that significantly diminished the prisoner's ability to assert trial ineffectiveness claims. And so, too, the court says it was the state's procedural framework that made ineffectiveness qualify as cause for a procedural default. I mean, all that language is clearly sort of saying that the blame here for post conviction ineffectiveness is ascribed to the state. Now, you know, I mean, this is an ascription, and we can argue whether it really is the state's fault. Or, you know, we can argue in all these contexts about, like, really? But essentially, this is the theory of Martine's, that the state has set up a system in which it's proper to ascribe the fault to the state, not to the defendant. I think Martine's is not the last word. In Davila, we're dealing with imagine that the state, Arizona, said you raise ineffectiveness of trial counsel on direct appeal. And your direct appeal attorney was negligent. They didn't do a good job. You go then to state post conviction, and that post conviction attorney doesn't even bother to raise that. You're now procedurally defaulted. And under Davila, I don't think you can go to federal habeas. So I don't think that Martine's discussion about whether the state chose to put it in post conviction versus direct appeal answers the question of, you know, in federal habeas, can you have an evidentiary hearing under E2? I think that's a question Congress answered by using the first part of the Keeney test. And in Holland and Williams, this Court has already said attorney error is attributable to the prisoner. So whether you have to raise ineffective assistance of trial counsel on direct appeal or on post conviction, if the post conviction attorney is negligent, that's going to be attributed to the prisoner for purposes of federal habeas. If the court in Martinez had accepted the prisoner's argument that there is a constitutional right, a Sixth Amendment right, to the effective assistance of counsel in the first post conviction proceeding when the state says you can't raise an effective assistance of counsel until the first post conviction proceeding, then it would follow, would it not, that the fault of the prisoner would be in the first post conviction proceeding? Or the fault of the ineffective attorney would not be attributed to the prisoner? I think what would follow is that you would have a claim, potentially a claim, for ineffective assistance of post conviction counsel. I think it would be a different question. But then I think I would prevent you from raising that in federal habeas. You would probably have to raise that through direct appeal of the state post conviction to this Court or through a subsequent state. But the Court did not accept that constitutional argument made by the petitioner. Correct, Your Honor. Which would potentially have changed the meaning of fault that was adopted by the Court in Williams where it said that the fault, that the failure to raise language in 2254E2 imposes a negligence standard. But the Court didn't do that. Correct, Your Honor. So what do you deduce from that? I think what I deduce is that Martinez was addressing a very narrow question, which is after there has been a procedural default, can the ineffectiveness of post conviction counsel provide cause in this one narrow circumstance? The answer is yes. And then you have to move on to the second step, which is prejudice. But it's a very, it's a three step, you know, is there a procedural default? Yes. Okay. Do we have cause and prejudice to excuse it? Martinez expressly said we are very narrowly saying as an equitable matter, the ineffectiveness of post conviction counsel can provide cause to excuse an existing procedural default. But just to go back to where the Chief Justice started, over and over in Martinez, when the Court is saying why this is important, the Court talks about the role of the attorney in developing evidence. I mean, you know, three, four, five times. Martinez was not under any, you know, misperception that this was not an evidentiary question, essentially. And, you know, as the Chief Justice said, this is why states do it this way, put it here, because everybody knows that in the vast majority of cases it's an evidentiary question. And Martinez talked about it in exactly those terms. This is what the counsel is supposed to be doing, is to develop evidence. That's correct, Your Honor. I mean, these are important questions, and they're often going to require the development of evidence. But Congress has answered the question in E2. And from Congress's point of view, even innocence is not enough, because that only satisfies B. You still have to meet A. This is a situation unlike, for example, the one year statute of limitations for a claim of actual innocence where this Court, I think in McQuiggan, said that gets around it. This is not a question that was not on Congress's mind. I mean, Congress was very specific. But Congress has only answered the question if we decide that the fault standard is met. And that's the entire question here is, is the fault standard met? It wouldn't be met if this were a constitutional ineffectiveness claim, as Justice Alito pointed out. So is it met here? And as I said, I do think that Martinez, although it didn't say that there was a constitutional right, that the whole theory of Martinez is about, you know what? This is the State's responsibility to take ownership of this and to make sure it doesn't go south. I think to say the fault standard would be met if this were itself a constitutional claim is not necessarily correct, because that's for the claim. The Martinez question is kind of a predicate question. Can you have an evidentiary hearing on the claim in the first place? So if it was made a constitutional right, then maybe it would support a claim, except for the fact that subsection I says you can't do it. But put aside I, it might be a claim. That doesn't mean it's not a procedural default. And I don't think this Court in Martinez was purporting to set forth general agency principles, because if that were true in Davila, there's no way to distinguish that position from Davila, where you said, well, the post-conviction counsel was negligent in raising ineffectiveness of direct appeal counsel. How could the post-conviction counsel be an agent for one specific purpose, or rather I should say not an agent for one specific purpose, which is to factually develop and raise the issue of ineffectiveness of trial counsel, but an agent for every other claim that could be raised on habeas? But you have a forceful argument on the statutory language, and I think this case is closed for that reason. But going back to Martinez, you went to Davila, but Martinez did contemplate, it seems, that ineffective assistance of trial counsel, that claim and that claim alone, I think, could be raised in federal habeas, even if otherwise defaulted, because it wouldn't be attributed to the client. And then the question becomes, well, did they really contemplate that it could be raised but not actually pursued, which seems like a very odd way to attribute what the Court did in Martinez. That's what I'm trying to figure out. There's obvious tension here, and that's what I'm trying to figure out. Right. And, again, our position is to the extent that one has to give, Martinez should give, because it's judge-made. But I think that the fundamental purpose of Ed Putt – What's wrong – sorry to interrupt, but what's wrong – I think this is really the heart of it for me – is what's wrong with saying that Martinez said that you're not at fault in this one specific area. In other words, the fault's not going to be attributed to the client in this one very particular specific area. And then that applies to the fail-to-develop language here. Well, this is certainly not my position, but if that's what Martinez meant, then I don't understand why you have to show prejudice. Because if there was no default in the first place, then there's no reason to get to cause a prejudice. You would just move right on to the ineffective assistance of trial claim. But I think Pinholster, to me, is really a case that's critical to understanding this. And in Pinholster, this court spoke about Williams, and it basically said Congress has set up two independent bars to really restrict habeas. I think the court said this was a watershed change in habeas. And it said you have D1, which if it reached the merits, the court has to defer to the state court. And if E2, a really high bar to evidentiary hearings. Congress was very clear. I mean, I think the answer, consistent with Ed Putt, is if somebody has a good claim, then they need to go to state court and file a second or successive habeas petition. Most states are post-conviction petition. Most states allow actual innocence as a ground. In Arizona, we allow that. So you could go to court. You could develop your record in state court. And I think that's the answer, given the statutory requirements of Ed Putt, which are very strict in this context. Thank you, counsel. Justice Thomas. Justice Breyer. I have one question, counsel. You devote just one paragraph to Ramirez's waiver claim. You admit that you did not raise this statutory argument that you're making today until your petition for rehearing. Normally, that's waiver. I don't know how you can claim that you didn't know that this was at issue when Mr. Ramirez, in his appellate brief on quoting pages 46 to 48, he specifically says, the equitable remedy developed in Martinez would be pointless without an opportunity for federal fact development. Federal court is Ramirez's opportunity to present the evidence that should have been presented years ago, but was not due to prior counsel's failure. That's a direct request to say I was entitled to my hearing, and yet you don't raise this argument. Why shouldn't we dig? You should not dig because in Ramirez, it was even more egregious because even taking all the evidence from the Martinez proffer, the Ninth Circuit said we're going to have yet another hearing on the merits, on the claim. So Ramirez is directly contrary to the language of E2. I'm sorry, counsel. That just gets to the point. You didn't raise this argument until your petition for rehearing. Our position up to that point was even if you look at his evidence, it's not enough to establish. That was your entire argument. It wasn't that he wasn't entitled to rely on that evidence. I wouldn't say it was our entire argument, but that was our position. When the Ninth Circuit said you've met Martinez, and now we're going to have a new hearing on the claim, go back and do that. And we said no, that violates E2. That's what we preserved. This was an alternative basis for affirmance. I don't think we had to raise it pre-petition for rehearing to preserve it. Thank you, counsel. Thank you. Justice Kagan, anything further? Justice Gorsuch? Just one question. I'm just going to ask a question that respondents brief ask and have you answer it before they stand up. They say on page 2, if you're not at fault for failing to raise a claim, how can you be at fault for failing to develop that claim? So I'll just give you a chance to answer their question before they stand up. My answer is you are at fault. Martinez said you have cause to excuse it. And you have to map that onto E2. You've now satisfied the first part of E2, so now you have to satisfy A and B. Unfortunately for them, they cannot satisfy A and B. They need to go to state court. Justice Barrett? Thank you, counsel. Thank you, counsel. Mr. Globe? Mr. Chief Justice, and may it please the Court, the limits imposed by Section 2254E2 only apply where, in the words of the statute, the applicant failed to develop the factual basis of a claim. And the statute doesn't define applicant failed to develop, but in Michael Williams, this court held that the phrase requires a finding of fault. So in arguing that Mr. Jones and Mr. Ramirez should be held at fault here, the state relies on Michael Williams' recitation of the general rule that an attorney's acts are generally to be attributable to a client. But this court has long recognized that attribution rule is not categorical in nature. Indeed, the state agrees that the failures of counsel are not to be attributed to the applicant when the attorney's ineffectiveness is at the strickland level and when it occurs either at a criminal trial or on a direct criminal appeal. This court in Coleman left open the question of the attribution where, like here, the state labels the first review instead of an appeal, instead calls it post-conviction review. This court nine years ago squarely addressed that open question, and this court examined the very same Arizona system at issue here, where the only review provided for ineffective counsel claims is on post-conviction review, and where that post-conviction review is not collateral or civil but is, under Arizona rule, part of the original criminal action. In that specific context, this court held that the labels used by the state do not matter and that the fault attribution is not to the claimant for the counsel's failures, just like in a direct appeal situation. This court held that the Arizona post-conviction review for such ineffective trial counsel claims is in many ways the equivalent of a direct appeal and that in both contexts the failures of counsel when it meets the strickland levels are not to be attributed to the claimant. That same fault calculus applies under E-2 and fully supports holding that E-2's restrictions do not apply to Mr. Jones or Mr. Ramirez. I welcome your question. Counsel, if we – well, first of all, I thought in Martinez we said that that was strictly procedural default. It was addressing the situation of procedural default and cause and prejudice. Correct, Your Honor. Yes, and it emphasized that it was, in effect, a first appeal. Correct. It was saying that it is the first opportunity of review, just like the situation of an appeal. So I thought it sort of – the suggestion was it was sui generis, but I'll let that go. If we – if it's going to be the practice to use Martinez to eventually require a full evidentiary hearing, why don't we just apply 2254 E-2 up front to the Martinez hearing? Your Honor, the first question under E-2 is whether you're at fault. And so the question is, are you going to be at fault under Martinez? The first stage is for cause and prejudice. You've defaulted your claim. You didn't raise it in state court. You need an inquiry as to whether you're to be held at fault for failing to raise that claim. So counsel here suggests that there's some separation between that because cause was found, that there was no fault. But here there was – the claim wasn't raised, and under Martinez – Don't you think it's a bit odd, though, that you can use that to basically eviscerate the restrictions of AEDPA? It doesn't eviscerate the restrictions of AEDPA. What it's doing is recognizing that where you're not at fault for not raising a claim, you're not going to be held ordinarily, just as a matter of logic and precedent, aren't going to be held at fault for failing to develop that same claim. Indeed, Congress recognized that. This Court has long recognized it. In Keeney, this Court said that those two inquiries of whether you're at fault for not raising it and not developing it, that there's little to be said for applying different standards. And in Michael Williams, at page 444, this Court said a ruling on one will be sufficient for the other. And when Congress adopted the Keeney standard and understood that under Keeney there was no delta, as a matter of logic and force, between those two inquiries of whether you're at fault for failing to raise the claim and failing to develop the claim. And that's why in Martinez and Trevino, this Court clearly anticipated that these important, substantial, ineffective trial counsel claims would be developed once cause was found and that the person was found not to be at fault for failing to raise it. And the rationale that this Court applied in Martinez for why you weren't at fault for not bringing the claim, in the first instance, applies squarely to E-2 as well. So Martinez says the post-conviction review provided, in many ways, the equivalent of a prisoner's direct appeal. And all agree that if these errors occurred in a state where you could raise ineffectiveness of trial counsel on appeal, everyone would agree you would not be attributing fault here to Mr. Jones and Mr. Ramirez. So the fact that these are, in Arizona, the way they've structured their system, the fact that the post-conviction review is in every meaningful way serving the exact same role as the appeal and functionally the same, can't be overlooked. So in both instances, in a direct appeal, and here in Arizona, the way they've constructed post-conviction review, this is your first and only right of review of an ineffective trial counsel claim. Well, this is a — this is really a tough case. You have a strong argument that accepting the State's interpretation of 2254E and Martinez would — of 2254E would drastically reduce what a lot of the lower courts have thought Martinez means. And I certainly understand why the courts of appeals have interpreted Martinez the way they did. But the fact remains that we have to follow the federal habeas statute. We have to follow it unless it's unconstitutional. And 2254E was interpreted in Michael Williams. The Court interpreted what it means to failure — for there to be a failure to develop the facts of a claim. And it said that that occurs when there is lack of diligence or some greater fault attributable to the prisoner or to the prisoner's counsel. That's where things stood at the time when we decided Martinez. Now, you know, it's nice to attribute omniscience to the Court. The fact of the matter is that this whole 2254E issue was not briefed by anybody in Martinez. And the Court didn't address it. So I think what you have to explain is how Martinez, which didn't purport to interpret 2254E and certainly didn't purport to overrule Michael Williams, which is the case you have to rely on, in support of your interpretation of failure to raise, how Martinez could be interpreted now to have changed what that statutory phrase means. We're not arguing that Martinez changed the statutory phrase. And we're not arguing that Michael Williams needs to be overruled. And we're not disagreeing with the general rule that ordinary counsel's failures will be attributed to the client. But it's always been understood, and there's no disagreement, that in some instances, in limited instances, the attorney's failures are not attributed to the client. Everyone agrees that if these same errors had occurred in a state on a direct appeal situation, that they would not be the same failures at a strickland level would not be attributed to the client. That's true. But that's because there would be a Sixth Amendment violation there. And that's exactly what the Court did not adopt in Michael Williams. It didn't address. It didn't address. It didn't reject it. It just said, we don't need to get there. Well, it didn't adopt it. So is that what you want us to do? You want us to say extend the application of the Sixth Amendment? No, Your Honor. Just like Martinez, you don't need to reach the issue. You just need to look at that all the attributes for fault that animate for not attributing fault in the situation in Coleman, and for a direct appeal situation, equally apply here. So, Martinez, there's two major elements you need to recognize. One is the equivalency, that it's just like a direct appeal in this circumstance, because you have the first right of appeal. It's a part of the criminal action. It's not a separate civil action. It's not a collateral attack. It's just like an appeal. It walks like a duck, quacks like a duck. It's not discretionary. It is a mandatory review, just like an appeal. Because the fact that Arizona has slapped a different label on it is not a reason to have a different fault attribution to the client. This arose in a different state where these very same errors occurred on a direct appeal. And this Court's cases involving post-conviction review and habeas review, saying they're materially different from appeal, they have no application here. Look at Pennsylvania v. Finley. They said, well, post-conviction review is different because it's civil, it's discretionary. But under the Arizona system, it is, by rule, look at Rule 32.3 of the Arizona criminal rules. It says it's part of the criminal action. It is not a separate action. And it is not discretionary. It's mandatory. This Court in Douglas v. California in Coleman said you should treat post-conviction review differently because you've already had your one bite at the apple. This is an additional layer of review. You've already had your appeal with constitutionally effective counsel. That's not true here. Arizona has shunted this into post-conviction review, circumventing the right to appeal. So just like in Martinez, you don't need to reach the constitutional issue, but you can see because it's the substantial equivalent, you should be treating them the same, and Congress would have expected that. And the second major element of Martinez is one that Justice Kagan mentioned. It's one that, under ordinary understanding at the time of Michael Williams and of time of E2, is that when there's an external force that impairs or obstructs the ability of the applicant to assert and to vindicate a constitutional right, you don't treat that as being attributed to the applicant. And it's very important that Martinez addressed that very same subject in this very context and said that the applicant in this situation is to be deemed obstructed and impeded by the acts of the state. And the Court explained why. At page 13 of the decision, it said, by deliberately choosing to move the trial ineffective counsel claims outside the direct appeal process, where counsel is constitutionally guaranteed, the state has significantly diminished the prisoner's ability to file and, of course, vindicate such ineffective trial counsel claims. So just nine years ago, a 7-2 majority here said what the state has done in constructing the system as it has impedes, in the words of the Court, and obstructs the vindication of these bedrock rights to effective trial counsel. Roberts. Mr. Loeb, do you have any general authority for what you do when you have a situation like this where the plain language of the statute seems to require one result, the result your friend argues for, and the plainly logical meaning of a subsequent precedent would seem to require the result that you argue for? Do you have a case that says how we're supposed to reconcile those two things? Your Honor, there isn't a conflict between the texts. The language failed to develop. It was taken from Keeney. I'm, once again, asking you if you have a case that talks about my hypothetical, which suggests that there is a conflict between the statute and between the logical reading of the precedent. I don't have a case that's going to satisfy you on that, Your Honor. But you have to look at the statute in light of what Congress understood when they enacted it. And certainly at the time they enacted it, they understood every time a court had found cause, there was always development of the facts. So Congress would have understood that whatever failed to develop and how it was applied, that if you were going to find cause that you weren't at fault for failing to raise the claim, logically and as a matter of logic and under Keeney case law, which Congress was aware of, you likewise would not be considered at fault for failing to develop the very same claim. So Martinez, in finding that there was cause there and the person wasn't at fault, Congress would have anticipated that if you weren't going to be held at fault for failing to bring the claim, you weren't going to be held at fault for failing to develop the claim. So there really isn't — That's a lot of prescience to ascribe to Congress. Well — But, Senator, you should — they would have anticipated the fact pattern that developed in Martinez, and that's how you should therefore read the statute that they drafted however many years before that. No, Your Honor. I mean, Coleman preceded E2's enactment in AEDPA. And at that time, Coleman left open the question of this particular context, of where instead of calling an appeal, you call it a post-conviction review, and that's your first opportunity to raise the constitutional claim. Coleman said we don't need to address that here in Coleman. It's not the facts of this case. And then this Court then squarely dealt with that open issue in Martinez and held you're not to be held at fault, and it's going to be treated just like where the attorney's ineffectiveness in raising the ineffective trial counsel claim occurred on a direct appeal. So Congress would have been aware — What did Coleman — — this was an open issue and would have expected the courts to address that open issue, applying the general principles of the time. And one of those principles are if there's an external force that obstructs or impedes you, you're not going to — you're not going to be attributing fault to the claimant. And here we have this Court expressly finding that the way Arizona set up its system, it's allowed to set up however it wants, but the way it does significantly diminishes the ability to vindicate this important constitutional right. What issue specifically do you think the Court left open in Coleman? Was it the question whether the Sixth Amendment would apply in the first post-conviction proceeding, or was it the question whether there could be a nonconstitutional basis for finding that the fault of the attorney is not attributable to the client? It's more the former, Your Honor, but it's in the context of cause and prejudice as to whether you're going to attribute fault to the applicant in that particular context for failing to raise the claim. And they left that open, and it was squarely then addressed by this Court in Martinez. And the rationale — you know, I'm not saying that Martinez controls the statute, but the rationale behind Martinez applies with full force here in saying that failed to develop, likewise, shouldn't be attributing fault to — To pick up on the Chief Justice's question and Justice Alito's, though, I think the other side says, well, the way you can square Martinez with the statute is to just read Martinez to do what it did, and only what it did, and subsequent cases like Davila support that, they say. And you can then hold the statute to say what it means, and means what it says in the ordinary meaning, failure to develop, and you can — Martinez still stands for what it stands for without getting into the logical implications of Martinez. I think that's a characterization of the other side, and we have to — we can't ignore the statute. So what's your best response to that? I mean, our best response is we're not ignoring the statute. We agree that you need to construe the statute here, and that failed to develop here needs to be read in this particular context, a context that this Court said is substantially equivalent to a direct appeal where you would not be attributing fault. It's a situation where this Court says that because of the acts and the way that Arizona has constructed its system, it's significantly diminishing the ability to vindicate that right. You're not going to attribute the fault to the applicant for failing to raise the claim. And then as a matter of logic and precedent, you would apply that very same rationale at the E-2 in deciding whether you were to be held at fault for failing to develop that claim that your counsel did not raise. So we're not asking to avoid the statute or to — or to — for an equitable exception to the statute. It has to be read in light of this particular context, and we're fortunate enough that this Court, applying like principles, has already looked at this very context in Arizona and said, look, it's really just like a direct appeal. There's no reason for treating fault differently in this situation than it is a direct appeal, and has looked at the situation and said the way Arizona has constructed its system, there's an external force here that obstructs and impedes the vindication of this right that significantly diminishes the ability of the applicant, and we're not going to treat him as a fault. So if he — all that rationale is correct as to why they shouldn't be held at fault for failing to bring the claim, and we're just — our argument is, yes, and for the very same reasons, you're not at fault for failing to develop. And you don't get to the other aspects of E-2 because there's that threshold standard. Did you fail to develop it, which Michael Williams says requires a finding of fault. What about, to pick up on Justice Thomas' question, that this would inevitably lead to extensive delays, and AEDPA was enacted to try to eliminate some of those delays in some of the litigation, particularly capital litigation. Do you want to respond to that? No, it doesn't add any additional delays. I mean, again, if these very same attorney errors had happened on a direct appeal, and there was no additional state forum to hear the ineffective trial counsel claims, you'd be in federal court just like we are. We're not asking for anything beyond what would be applied in the ordinary context where these very same kind of errors happen on a direct appeal. So we're not adding to anything. We're just trying to get the same equivalence of what would happen in a state where you can raise these things on a direct appeal, and to avoid the fortuity that would exist under the Arizona argument here that, well, if this arose in a state where you can raise on appeal, then you get to proceed in federal court. But if it arose in Arizona where they've labeled the exact same thing, but they've just labeled it post-conviction review, now you don't have a forum that will ever meaningfully hear your ineffective trial counsel claims. There's no reason to ascribe that intent to Congress here. The language does not abide by that extreme reading, that just because of how the state here has labeled that first right of review as post-conviction review as opposed to labeling it appeal, that substantial claims regarding ineffective trial counsel, one of the most meaningful rights, a bedrock right, this Court said, to having a fair justice system, will never be heard. Because these claims, as you said in Martinez and said in Trevino, inherently require factual development. There's a second material misreading of the state he has of E-2, is that they're saying that it bars all consideration of evidence beyond the state court record. However, it only bars having an evidentiary hearing on the claim. So when you have evidence that's already been accepted by a federal court on the cause and prejudice stage, that is not covered by the plain language of E-2. That is not an evidentiary hearing of the claim. That's just considering evidence that you already have in your hand. And Arizona's contrary argument would mean that a federal court has in its hands strong evidence, like you have for Mr. Jones here, that he did not commit the murder that he was charged with. And the federal court has it in its hands, and the district court here ordered his release, given the strength of that evidence, or his retrial. And Arizona's argument is that the federal court should just turn a blind eye to that evidence. A construction of the statute that would require that, as the amicus brief from the former DOJ bipartisan prosecutor says, that would really taint the federal judicial system. For the federal courts to have this evidence that he didn't commit the crime in his hand, and to do nothing is really going to make them complicit in an improper effecting of the death penalty here. One other response. Go ahead. Counsel, I guess given the predictions of the dissent in Martinez, I was surprised that one of the statistics I read is that there's only two cases a year that present a Martinez hearing, where a court has found that a prisoner is eligible for a Martinez hearing? I think the amicus briefs went through all the times Martinez has been raised in the primary states where it's at issue, and it's found in the nine years there were several, two to three dozen cases over nine years. I don't think it was two or three. I think one or two cases that ultimately then people vindicated and got release orders, et cetera. But the number of hearings we're talking about over a nine-year period, over several states, is the fact that several dozen of them is not a substantial burden. Of course, this is a statutory construction question and not a question of whether it's overly burdening, of course. But this court in Martinez adopted a very narrow rule to a very narrow context, anticipated it wouldn't be a significant burden. You have no reason to think amicus briefs write that this happens rarely? Correct, Your Honor. Okay. And the record is borne that out. What this court predicted in Martinez is this would not be a significant burden, but it would be an important, necessary way to vindicate one of the most important rights in the Constitution, and that's been borne out over the last nine years. That's because this is a completely unusual situation, as you pointed out. No court would have reviewed this evidence to see if someone was guilty as charged, correct? There would be no court which could meaningfully review the ineffective trial counsel claim here. That would be the Martinez's point, correct? And the kind of evidence that was adduced for Mr. Jones showing that the murder charges against him were baseless and the kind of evidence adduced as to Mr. Ramirez showing that there is substantial mitigation evidence that he should not be given the death penalty would have never seen the light of day, but for the appointment of competent counsel who then were given a chance to develop the record and to present that evidence to federal court. One of the things that your friend on the other side says in response to what you just said, and I have no idea whether this is sufficient, but I just want you to respond to it, is they say Arizona has a forum for raising actual innocence claims. Can you respond to their raising of that point? To say that you have a forum for hearing, and one which no one has ever succeeded in, to raise an actual innocence claim is not giving you a forum to vindicate one of the most vital rights, the right to effective trial counsel. Whether you're innocent or guilty, you have a right to a fair hearing. You have a right to an effective trial counsel, and you have a right to have that vindicated. So it's like them saying if you're coaching a basketball game and one team gets five players and one team gets one player and we're going to play the game, but at the end of the game we're going to give you a shot from half court, and that's going to make the game fair. That does not make the game fair, Your Honor. There's a right to trial counsel here, and there was never a fair trial for Mr. Ramirez or for Mr. Jones, and the fact that they give a Hail Mary opportunity for relief at the end of the day or can give a pardon to Mr. Jones, that does not mean that the right to effective trial counsel is being vindicated here. And as Justice Sotomayor pointed out, a third argument which pertains only to Mr. Ramirez, which there was no real meaningful response here, because Mr. Ramirez on the appeal before the panel in the Ninth Circuit clearly was relying on materials beyond that which was presented to the state court, and that was not rejected by the state before the panel. It was not objected to. They didn't say, well, E2 bars consideration of evidence. They told the panel to consider that evidence, and the panel then went on to render a decision based on the arguments that they made without even them raising E2, and then they have, I think, the audacity in their cert petition to say, well, E2 is not even mentioned in the Ninth Circuit decision. Well, it's not mentioned because they didn't raise it. So it's completely sandbagged, the Ninth Circuit panel here, by only raising this in the embank petition and then their cert petition and blaming the panel for never reaching the issue that they didn't raise. They made a decision not to raise E2 before the panel. That's a waiver. It's not fair to the panel. It's certainly not fair to Mr. Ramirez. He would have responded to the E2 argument if it was raised before the panel. So for Mr. Ramirez, you should affirm on the additional basis that the claims against him were waived. Justice Thomas? Thank you, counsel. Rebuttal, Mr. Royston. Thank you, Your Honor. If I can make three brief points. First, as to the question of is there a case that deals with this paradox of implications of a judge made versus statute, the dissent at the Ninth Circuit, page 373 of the joint appendix cited Ross v. Blake. Congress sets the rules and courts have a role in creating exceptions only if Congress wants them to. And I think that's the fundamental question. Here Congress, through A and B, by setting such a high bar for having an evidentiary hearing, even actual innocence is not enough, has made clear it does not want the court to create additional exceptions. And the building block is Williams. As to the agency principles, Williams clearly holds at Head Note 6 that attributable to the prisoner or the prisoner's counsel. So I think the answer has already been decided. The second point, I think there's a faulty assumption that Martinez somehow guarantees the right to have the claim heard in federal habeas in district court. That's wrong. Even in a state where ineffective assistance of trial counsel is brought in direct appeal, if there's one level of post-conviction review and that post-conviction review counsel does not pursue those claims, then as a matter of independent and adequate state law, the federal court can't hear it. So I don't think Martinez was doing anything more than what it purported to do, which was to narrowly create an equitable basis for cause following a procedural default. As to the waiver on Ramirez, just to be clear, the state's position up to the panel hearing was, even if you look at that evidence, it's not going to establish ineffective assistance of trial counsel. This is the classic death penalty claim that I needed more mitigation than what I got. That's the run-of-the-mill case. The state won at the district court on it. It didn't present it as an alternative basis for affirmance. But once the Ninth Circuit said, no, we're going to have yet another hearing on the claim, the state timely objected to a petition for rehearing and rehearing on bond. With that, I respectfully ask that the court reverse both judgments of the Ninth Circuit. Thank you. Thank you, counsel. The case is submitted.